THERMAL INSULATION SYSTEMS,
INC., Plaintiff,

v.

ARK–SEAL CORPORATION, Defendant.

No. 80–4035.

United States District Court,
D. Kansas.

Oct. 9, 1980.

Danton C. Hejtmanek, Jones, Schroer, Rice, Bryan & Lykins, Chdt., Topeka, Kan., for plaintiff.

Howard Bittman, Boulder, Colo., Henry Sperber, President, Ark-Seal, Inc., Denver, Colo., Terry E. Beck, Tilton, Dillon, Beck & Crockett, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action brought by the plaintiff, Thermal Insulation Systems, Inc., a Kansas corporation, seeking to recover damages for breach of contract and warranty in the purchase of an insulation machine

manufactured and sold by the defendant, Ark-Seal, Inc., a Colorado corporation. This matter comes before the court on defendant's motion to dismiss for lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted.

The context in which this claim arose and the critical jurisdictional facts are as follows. Sometime prior to January 25, 1979, Darrel W. Goodnow, president of plaintiff, saw defendant's advertisement in *The Guide*, a trade journal of the insulation and weatherproofing industries, which is sold and distributed in Kansas. Mr. Goodnow responded to the ad and received a letter and a brochure about an insulation machine designed and manufactured by the defendant. The letter indicated the price of the machine, stated that immediate delivery was possible, and requested the plaintiff to "[w]rite, or send enclosed card or call collect *now*." In addition, the letter stated that a one day training session in Denver was included in the purchase price and that Ark-Seal would reimburse the plaintiff for the air fare after the purchase of the machine. Plaintiff and defendant then engaged in negotiations concerning the sale of the machine in several conversations over the telephone. Mr. Goodnow then went to Colorado, purchased a machine, and arranged for the machine to be shipped to Kansas. Subsequently, the machine allegedly malfunctioned and was returned to Colorado for repairs. The machine was then later returned to Thermal Insulation. Plaintiff's complaint alleges that the machine still does not function as the defendant promised it would and that they have incurred substantial losses as a result.

Plaintiff alleges that jurisdiction over the defendant exists pursuant to the Kansas long arm statute: K.S.A. § 60–308. The specific statutory provision relied upon, K.S.A. § 60–308(b)(1), provides as follows:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state;"

The plaintiff argues that the defendant "transacted business" in Kansas by placing advertisements in *The Guide* soliciting plaintiff's business and by mailing brochures into the state attempting to induce a purchase of the product by the plaintiff.

The defendant refutes the plaintiff's contentions by asserting that it lacks the requisite "minimum contacts" with Kansas necessary to subject them to personal jurisdictional and service of process under the Kansas long arm statute. They assert that plaintiff contacted them, that plaintiff's purchase order was received in Colorado, that plaintiff travelled to Colorado to purchase their machine, and that plaintiff arranged for shipment of the machine to Kansas. It is undisputed by plaintiff that defendant is not licensed to do business in Kansas; maintains no offices or places of business in Kansas; has no agents or representatives here; and was never physically present in the state with regard to this transaction.

A two step analysis is involved when considering jurisdictional questions. First, it must be determined whether the defendant's conduct falls within the scope of any of the enumerated provisions of the Kansas long arm statute. Then, it must be determined whether the defendant's contacts with the state of Kansas are sufficient to meet the due process requirements set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and further developed in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) and most recently in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Both the statutory and constitutional requirements must be met for this court to assert

personal jurisdiction over the defendant. Thus, the issue presented here is whether the defendant's activities in this case constitute the "transaction of any business" in Kansas and satisfy the requirements of due process.

■ It must be noted that when the existence of personal jurisdiction is controverted, plaintiff need only make out a prima facie case that the constitutional and statutory requirements for the assumption of personal jurisdiction are satisfied. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979); *Professional Investors Life Ins. Co. v. Roussel*, 445 F.Supp. 687, 691–92 (D.Kan.1978). A court may consider affidavits and documentary evidence in considering whether such a showing has been made. *Ammon, supra*, at 1309; *Purdue v. Jerry Black's Britain Auto Imports, Inc.*, No. 78–4201 (D.Kan., 10/20/78, unpublished). The court must give the plaintiff the benefit of all factual doubt. *Ammon, supra*, at 1309; *Heyen v. May*, No. 75–238–C6 (D.Kan., 1/29/76, unpublished). With these considerations in mind, we look first to see if the defendant's conduct falls within the enumerated provisions of the Kansas long arm statute.

■ It is well established that the Kansas Supreme Court has held that the legislative intent of K.S.A. § 60–308 is to assert jurisdiction over a nonresident defendant to the full extent permitted by the Constitution. *Whisenant v. Whisenant*, 219 Kan. 387, 548 P.2d 470, 475 (1976); *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248, 1251 (1974); *White v. Goldthwaite*, 204 Kan. 83, 460 P.2d 578, 582 (1969); *Woodring v. Hall*, 200 Kan. 597, 438 P.2d 135, 141 (1968). However, it has also been recognized that by enacting a statute with enumerated provisions, there is the possibility that conduct that is permitted by the due process clause may not fall within the provisions of K.S.A. § 60–308. *J. E. M. Corp. v. McClellan*, 462 F.Supp. 1246, 1254 (D.Kan.1978); *Professional Investors Life Ins. Co., supra*, at 692. This situation has occurred in several cases and the legislature has responded with additions to the Kansas long arm statute. See *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969) [Court held that the long arm statute did not authorize service on a corporate officer or director whose only contact with the state was in his corporate capacity and the legislature responded with K.S.A. § 60–308(b)(6)]; *Whisenant, supra*, [Court held that conception of a child did not fall within the long arm provisions and the legislature responded with K.S.A. § 60–308(b)(10)].

Plaintiff relies on K.S.A. § 60–308(b)(1), "transaction of any business within the state," to authorize jurisdiction under the statute. Kansas, like many other states, passed its long arm statute in order to take advantage of the expanding jurisdictional concepts of *International Shoe*. See Casad, *Long Arm and Convenient Forum*, 20 Kan. L.Rev. 1, 14 (1971). Since its passage in 1964, Kansas courts, both state and federal, have interpreted the statute with differing and sometimes confusing results. Illinois was the first state to produce a comprehensive statute designed to expand the scope of personal jurisdiction to the extent allowed by the due process clause. The Kansas long arm statute was initially very similar to the Illinois statute and the Kansas Supreme Court has recognized this and said that the legislature must have presumed to have intended the Kansas statute to have the meaning reflected in previously decided Illinois cases. *Woodring, supra*, 200 Kan. at 600, 438 P.2d at 139–40.

This opinion is concerned with the interpretation that Kansas courts have placed on K.S.A. § 60–308(b)(1). It has generally been thought by Kansas federal courts and Kansas commentators that the Kansas Supreme Court has held that a nonresident defendant's physical presence is required in Kansas with respect to the transaction involved in the litigation before personal jurisdictional could be had under K.S.A. § 60–308(b)(1). *Ammon v. Kaplow, supra*, at 1309; *J. E. M. Corp. v. McClellan, supra*, at 1251; *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307, 311–12 (D.Kan.1969); Casad, *Long Arm, supra*, at 27; Note, 27 Kan. L.Rev. 135, 137 (1978). This interpretation

is based primarily upon the decisions in *Woodring v. Hall, supra,* and *White v. Goldthwaite, supra.* We are not convinced that this was the appropriate interpretation intended by the Kansas Supreme Court and further we believe that if the question arose today the Court would finally lay this troublesome question to rest in accordance with this decision. Kansas courts and commentators alike have questioned whether this interpretation is exactly what the Court meant but there has been general acceptance without any real discussion or analysis of the issue. This opinion will attempt to set forth the appropriate analysis.

*Woodring* was the first case to interpret the phrase "transaction of any business within the state." In *Woodring,* the plaintiff, a Kansas resident, sued her former son-in-law, a former Kansas resident but since 1962 domiciled in Texas, to obtain repayment of a loan made over several years. Service was made pursuant to K.S.A. § 60–308(b)(1) and the defendant challenged jurisdiction. The court found that the defendant had substantial contacts, as well as physical presence, with Kansas so as to make the exercise of jurisdiction fair. The defendant had attempted to distinguish between "private" business and "commercial" business in asserting that his conduct did not fall within the terms of the statute. The Court was concerned primarily with this distinction in the opinion and went to great lengths to set out and distinguish "transaction of any business" from the old phrase "doing business". Subsequent cases in the federal courts relied upon the following quote as an indication that the Kansas Supreme Court emphasized physical presence:

> "In a broad sense, 'business' is transacted within the state when an individual is within or enters this state in person or by agent and through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires." 200 Kan. at 607, 438 P.2d at 144.

The *Woodring* court then went on to rely on Illinois cases for the rule that the statute should not be restricted to those cases alone where its language literally describes the activities of the defendant. This court feels that the Kansas Supreme Court was simply taking a broad view of the term "transacting business." The interpretation that this language seemingly required physical contacts does not seem justified when you look at the statement that preceded the above definition. The Court said that "the phrase 'transaction of any business' itself is all encompassing and was used by the Legislature in its broadest legal sense and as intending to authorize the personal service of summons upon a corporate or individual defendant to the full extent of the due process clause." 200 Kan. at 606, 438 P.2d at 144. In interpreting the statute, the *Woodring* court failed to distinguish between constitutional due process considerations and the application of the statute. As one commentator noted, "[The court's definition of transaction of business] emphasized physical contacts with the state, but it is unclear whether the court meant that physical contacts were necessary to meet the requirements of due process or the requirements of the statute." Note, 27 Kan. L.Rev., *supra,* at 136. It is simply uncertain what the court meant by this definition. The opinion is further complicated by the fact that the Court relies extensively upon an Illinois case, *Koplin v. Thomas, Haab & Botts,* 73 Ill.App.2d 242, 219 N.E.2d 646 (1966). *Koplin* held that jurisdiction over a nonresident defendant pursuant to the "transaction of any business" section of the long arm statute does not depend upon the defendant or its agent having been physically present in the state. All of which leads this court to believe that the Kansas Supreme Court in *Woodring* was more concerned with the distinction between commercial and personal transactions than in setting standards for the contacts that would be deemed necessary for a nonresident defendant to have with Kansas.

We move next to *Goldthwaite,* a "transaction of business" case decided the following year. In *Goldthwaite,* a contract had been made in Oklahoma between Kansas and Oklahoma residents, and the contacts

with Kansas were few. Once again the court's analysis of statutory and due process considerations is vague and indistinguishable. The *Goldthwaite* court looked at the United States Supreme Court cases on due process limitations and adopted the following standard for determining when jurisdiction over nonresidents on the basis of the "transacting business" provision shall be exercised:

> (1) [T]he nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of the laws of the forum state afforded the respective parties, and the basic equities of the situation. 204 Kan. at 88, 460 P.2d at 582.

This formula is taken from *Tyee Constr. Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245 (1963) and seemed to emphasize physical contacts. However, it must be noted that in *Tyee*, the "transaction of any business" provision was held not applicable as a matter of due process, rather than as a matter of statutory construction. Similarly, in *Goldthwaite*, there was no analysis or discussion of whether the defendant was "transacting business" in Kansas under the terms of the statute. The *Goldthwaite* court seemed to be relying solely on due process considerations. Professor Casad interpreted the analysis and test of the Court as follows:

> This formula contains elements that are relevant to the due process question and others that are meaningful only in terms of our statute. It purportedly derives from the United States Supreme Court decisions, but it deals with jurisdiction "on the basis of transaction of business," a statutory conception. The third "factor" is the *International Shoe* doctrine. The first factor, is taken from the narrow *Hanson* impact notion, which the *Hanson* majority thought was merely a clarification of the *International Shoe* standards. The second factor, of course, is not a constitutional requirement, but a provision stemming from our statute, which extends to "causes of action arising from" the enumerated acts.
>
> The Kansas Supreme Court's reduction of the fourteenth amendment's due process requirements to a formula in *Goldthwaite* is inappropriate....
>
> The Kansas court, however, interpreted *Hanson* as requiring physical contact by the defendant with the territory of the forum state. After reciting the points of contact the transaction had with Kansas, the court said: "The difficulty is these were all activities of plaintiff, not defendant." The court then quoted a phrase from the *Hanson* majority opinion: "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." The *Goldthwaite* court interprets that statement to mean that even if a "transaction" contemplates substantial activity in the state, unless it is the defendant who is to perform the activity, long arm jurisdiction over the defendant violates due process.
>
> Here the failure to separate the question of due process from the question of statutory construction leads to difficulty. It is one thing to say that the legislature did not intend to extend jurisdiction over defendants such as Mrs. Goldthwaite; it is quite another to hold that it could not constitutionally do so. The interpretation the Kansas court drew from the *Hanson* passage was surely not what the Supreme Court had in mind. 20 Kan.L.Rev. at 23–24. (citations omitted).

It is this court's feeling that the Kansas Supreme Court was dealing primarily with due process limitations. The lack of discussion of the statutory provision is certainly evidence in this regard. This court recognizes that the same factors which enter into a determination of whether the literal re-

quirements of the long arm statute have been met are *not* the same as those involved in deciding whether the concepts of due process have been satisfied. See *J. E. M. Corp. v. McClellan, supra,* at 1253 and *Professional Investors Life Ins. Co. v. Roussel, supra,* at 694. But see *Stonecipher v. Sexton,* 54 F.R.D. 435, 439 (D.Kan.1972). We feel that the Kansas Supreme Court was not requiring a nonresident defendant's physical presence in Kansas within the meaning of the statute, and if they were, it was based upon a faulty interpretation of *Hanson* as pointed out by Professor Casad, *supra.*

Despite the vagueness in these decisions, later cases determined that the Kansas Supreme Court required that a nonresident defendant, or his agent, be physically present within Kansas in order for the defendant to transact business in the state under K.S.A. § 60–308(b)(1). In *Oswalt Industries v. Gilmore, supra,* a Kansas corporation sued a Georgia buyer for breach of contract. The transaction involved occurred when the Georgia buyer phoned an order to plaintiff in response to plaintiff's advertisement in a national magazine. The contract had been negotiated by mail, by telephone, and by personal contact between defendant and plaintiff's salesman in Georgia. Notwithstanding that defendant came to Kansas once to examine plaintiff's new manufacturing facilities, the Court concluded that these activities did not constitute "transaction of business" as contemplated by the Kansas long arm statute, and suggested that if the Kansas statute did cover this, it would be contrary to due process. The Court distinguished other cases from other states with similar facts under a comparable provision on the basis that more contact is required to satisfy due process if the defendant is a buyer rather than a seller. This distinction is hard to understand, but it does further point out the emphasis on due process that the courts were taking.

In 1971, the Kansas legislature added a new subsection to the long arm statute: K.S.A. § 60–308(b)(5). This subsection provided for jurisdiction as follows:

"(5) Entering into an express or implied contract, by mail or otherwise, with a resident of the state to be performed in whole or in part by either party in this state ..."

As Professor Casad stated: "That provision was undoubtedly added to the statute to counteract *Goldthwaite* and certain federal court decisions similarly giving a narrow reach to the long arm statute in 'transaction of business' cases. 20 Kan.L.Rev., *supra,* at 24–25. Also see *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 852, 528 P.2d 1248, 1251 (1974). This addition presented the courts with a new device to get around the narrow interpretations of K.S.A. § 60–308(b)(1). It must be noted that in the instant case that the plaintiff has not relied upon K.S.A. § 60–308(b)(5). This court feels that this subsection might have some application in this case but the plaintiff has not mentioned it or cited sufficient facts to allow the court to make any determination under it.

After the addition of K.S.A. § 60–308(b)(5), the Kansas courts were faced with several cases alleging jurisdiction over the defendant by relying on (b)(1) and (b)(5). In *Peebles v. Murray,* 411 F.Supp. 1174 (D.Kan.1976), the plaintiff asked the court to consider the Illinois cases which do not require physical presences of the defendant in the forum state in order to exercise personal jurisdiction under the "transaction of business" provision. The court found it unnecessary to reach that issue because, relying on *Stonecipher v. Sexton, supra,* the court stated that the same factors which enter into a determination of whether the literal requirements of the long arm statute have been satisfied are involved in deciding whether the concepts of due process have been fulfilled. As pointed out earlier in this opinion, this court feels that viewpoint is improper. Subsequent Kansas federal district court cases have also avoided the issue raised by the plaintiff in *Peebles* and have simply relied upon *Woodring* and *Goldthwaite* in holding that § 60–308(b)(1) requires physical presence of the

defendant in Kansas. See *e. g.*, *Ammon v. Kaplow, supra; J. E. M. Corp. v. McClellan, supra.*

All of this brings us to the most recent cases on this issue. All are Kansas Court of Appeals cases and all appear to deemphasize the requirement of physical presence. In *Prather v. Olson*, 1 Kan.App.2d 142, 562 P.2d 142 (1977), a Kansas plaintiff had entered into a cattle leasing arrangement with a Missouri rancher for tax shelter purposes. The defendant had not entered Kansas pursuant to the transaction but had solicited the plaintiff's business, although the contact was indirect in that the plaintiff had learned of the defendant through a neighbor. In his action against the Missouri defendant for an accounting under the cattle lease, the plaintiff relied upon K.S.A. § 60–308(b)(1) and (5) for jurisdiction. Summarily stating that constitutional due process had been met, the court held that the defendant was within the scope of both of the provisions of the long arm statute. The court did not discuss the requirement of physical presence. However, this court feels this case is a clear indication that the Kansas courts intend to move away from the requirement of physical presence.

Then in *Rosedale State Bank and Trust Co. v. Stringer*, 2 Kan.App.2d 331, 579 P.2d 158 (1978) and *Davis v. Grace*, 4 Kan.App.2d 704, 610 P.2d 1140 (1980), the Kansas Court of Appeals went even further in deemphasizing the need for the defendant's physical presence within the forum state. In *Rosedale*, the plaintiff Kansas bank sued the defendant, a resident of Missouri, on a promissory note that was a renewal note for an earlier loan. The Court found that the defendant had submitted to jurisdiction in Kansas under K.S.A. § 60–308(b)(1) and (5) despite the fact that the defendant had never entered the state with regard to the renewal of the original note. Similarly in *Davis*, the Court stated: "Defendant should not be allowed to insulate himself from suit in Kansas simply because he never personally entered the state." 4 Kan.App.2d at 714, 610 P.2d 1140. Both of these cases were decided on due process considerations but this court feels that both cases are clear

expressions by the Kansas courts that physical presence is no longer required under the terms of the statute or under the concepts of due process. Moreover, it is well established in other states that a nonresident defendant may be found to have transacted business in a state even though neither the defendant, nor any agent of the defendant, had ever been physically present in the forum. See *Koplin v. Thomas, Haab & Botts, supra; Ziegler v. Houghton-Mifflin Co.*, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967) [the two preceding cases applying the identical long arm statute of Illinois]; *Cowan v. First Ins. Co. of Hawaii, Ltd.*, Haw., 608 P.2d 394 (1980); *Weyrich v. Lively*, 361 F.Supp. 1147 (D.Colo.1973) [applying Colorado law]; *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539 (1973); *Fullmer v. Sloan's Sporting Goods Co.*, 277 F.Supp. 995 (S.D.N.Y.1967) [applying Idaho law]; *State ex rel. White Lumber Sales, Inc. v. Sulmonetti*, 252 Or. 121, 448 P.2d 571 (1968).

The court in *Kiefer v. May, supra*, in a factual situation directly on point with the instant case, explained why courts have done away with the physical presence requirement.

"Defendant has placed great emphasis on the fact that he was not physically present in the state when he executed the note. *This Court is of the opinion that one need not be physically present in the state to 'transact business within the state.'*

"Modern technology has taken us far beyond the point where two men must stand in each other's physical presence to transact business. Widespread use of the telephone and the mails make actual physical presence unnecessary in many cases. New methods of communication, such as the picture phone, allow a businessman to be 'electronically present' in a state. Exact copies of executed documents can be transmitted electronically in a matter of seconds.

"For all practical purposes, transactions accomplished with such devices have the same effect as if the two men had been in each other's physical presence." 208

N.W.2d at 542 [quoting from *McGraw v. Matthaei*, 340 F.Supp. 162, 164 (E.D.Mich. 1972)].

Based upon the above discussion, this court is not certain that the Kansas Supreme Court ever intended the narrow construction that has been placed upon K.S.A. § 60–308(b)(1) by subsequent Kansas cases. Further, the court believes that the recent Kansas Court of Appeals cases coupled with the trend in other states is a clear indication that the Kansas Supreme Court would no longer consider physical presence by the defendant in Kansas a requirement under the long arm statute. Therefore, we hold that physical presence by the defendant is no longer a requirement in determining jurisdiction under K.S.A. § 60–308(b)(1), but rather it is only a factor to consider.

Thus, finding the requisite "transaction of business" demands an examination of all of the defendant's activities within the forum related to the present cause of action. Here, the defendant's contacts with the state included advertising and soliciting the sale which gave rise to the instant cause of action. The defendant advertised in a trade journal which was sold and distributed in Kansas. It was, in fact, this advertisement which initially led plaintiff to contact Ark-Seal concerning the insulation machine. Then communications took place between the parties through the mail and by telephone concerning the sale of the machine. In fact, the defendant invited the plaintiff to Colorado to purchase the machine. In addition, after purchase, the machine was shipped to Colorado for repairs and later returned to Kansas.

Advertising in magazines of national circulation provided the requisite transaction of business in the forum state to subject a nonresident defendant corporation to jurisdiction under Idaho's long arm statute in *Fullmer v. Sloan's Sporting Goods Co., supra.* The court there stated:

> In advertising its products in magazines of national circulation, which led to the sale here involved, defendant was doing an act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish its business purposes in the State of Idaho which was sufficient to subject defendant to jurisdiction in Idaho ... 277 F.Supp. at 997.

Ark-Seal's advertising in an international trade journal served a similar objective. Ark-Seal's advertisements for the sale of the insulation machine led to plaintiff's initial inquiry and eventually to the formation of the transaction here at issue. Further, defendant's later letter to plaintiff demonstrates the defendant's clear intent to solicit business in Kansas. Thus, considering all of the defendant's business activities and despite the fact that Ark-Seal was never physically present within the State, this Court finds that the defendant did transact business in Kansas within the meaning of K.S.A. § 60–308(b)(1).

We now turn to an analysis under due process considerations. The due process clause of the Fourteenth Amendment of the United States Constitution operates as a limitation on jurisdiction over nonresidents. *Kulko v. Superior Court, supra,* 436 U.S. at 91, 98 S.Ct. at 1696. Thus, our application of K.S.A. § 60–308(b)(1) must comport with the requirements of due process to be valid. In a recent opinion, *World-Wide Volkswagen Corp. v. Woodson, supra,* the United States Supreme Court reaffirmed the ability of courts to exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. 444 U.S. at 291, 100 S.Ct. at 564. Under due process analysis, a court must look to the "quality and nature" of the defendant's activity to determine whether it is both "reasonable" and "fair" to require the defendant to conduct his defense in the forum state. *Kulko, supra,* 436 U.S. at 92, 98 S.Ct. at 1697. In every case there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Actual physical contacts by the defendant with the forum state

are not required by the due process clause. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977); *Rosedale State Bank and Trust Co., v. Stringer, supra,* 2 Kan.App.2d at 333, 579 P.2d at 160.

Like other tests requiring the determination of reasonableness or fairness, the "minimum contacts" test precludes mechanical application. Instead, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko, supra,* 436 U.S. at 92, 98 S.Ct. at 1697. Inconvenience to the parties and the interest of the state in providing a forum for the action are also relevant considerations. *Kulko, supra,* 436 U.S. at 93, 98 S.Ct. at 1697; *J. E. M. Corp. v. McClellan, supra* at 1255; *Pedi Bares, supra,* at 937. The United States Supreme Court in *World-Wide Volkswagen* recently discussed these principles and the concept of "foreseeability" as a criterion for establishing in personam jurisdiction. Although finding foreseeability of injury in the forum is not sufficient for personal jurisdiction under the due process clause, the Court acknowledged that it was not wholly irrelevant. As the Court noted: "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567.

The defendant argues that the requirements of due process have not been met in the instant case because "minimum contacts" have not been shown because the only contact that the plaintiff alleges is the advertisement in the trade journal. Ark-Seal maintains that such a contact is insufficient. However, the defendant fails to note the other contacts alleged by the plaintiff in the instant case. In addition to the advertising, there were several communications by mail and telephone. Further, the

defendant attempted repair on the plaintiff's machine and later returned it to Thermal Insulation in Kansas. Under the due process analysis, this court finds that jurisdiction is proper under this set of facts. The defendant availed himself of the benefits of the laws of Kansas by soliciting business within the State. Ark-Seal stood to gain significant economic advantage from a Kansas resident through this business transaction. In addition, Kansas has a manifest interest in protecting its residents against nonresidents who breach contracts. *Pedi Bares, Inc., supra,* at 937; *Aviation Data Service, Inc. v. Global Jet Sales, Inc.,* No. 80–1315 (D.Kan. 8/14/80). The convenience of the witnesses in this case seems to be equally balanced. However, since the machine is presently located in Kansas, it would seem of little inconvenience to Ark-Seal to have the litigation take place here since the machine itself will probably play a large role in the litigation. Further, Ark-Seal is a corporation which attempts to sell its products nationwide and has distributorships across the nation; thus, requiring Ark-Seal to conduct its defense in Kansas would not appear to entail an insurmountable hardship. Lastly, the consideration of "foreseeability" further supports requiring the defendant to present their defense in Kansas. It was completely foreseeable that this sale would have an effect in Kansas. The defendants were well aware of who they were dealing with and could readily foresee and anticipate that any complaints regarding their machine would originate here.

Therefore, this court concludes that in personam jurisdiction is proper under the facts of this case. Thus, defendant's motion to dismiss IS HEREBY DENIED. Pursuant to Rule 12(a)(1) of the Federal Rules of Civil Procedure, defendant shall serve its responsive pleading within ten (10) days after notice of this order.

IT IS SO ORDERED.